

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00487-CR

JAMAL T. LUCKETT                                                    APPELLANT

V.

THE STATE OF TEXAS                                                       STATE

----------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Jamal T. Luckett appeals his conviction for possession of a controlled substance with intent to deliver. We will affirm.

## Background

In September 2009, Fort Worth police officers were conducting surveillance on a duplex at 5314 Humbert Avenue, Fort Worth, Texas on the belief that drug activity was occurring there. The officers saw Appellant answer

---

[1]*See* Tex. R. App. P. 47.4.

the door to a number of people (including a suspected drug supplier), who would enter the house, stay for approximately fifteen to twenty minutes, and leave.

On September 19, 2009, Fort Worth police officers executed a no-knock search warrant at the duplex. Inside the duplex, police found crack cocaine hidden in a cut-out compartment in the doorframe of a closet. The cocaine was divided into one large bag of cocaine and a number of smaller baggies. Inside the closet, police officers found a blue jacket with another bag of cocaine in one of the pockets. In total, officers found 29.67 grams of cocaine in the duplex.

In the kitchen, police found two digital scales, empty baggies identical to the smaller baggies containing cocaine found in the doorframe, and Appellant's cell phone containing a number of pictures of him, including one showing him in the blue jacket. Police also found a letter addressed to Appellant at a different address than that of the duplex and a legal document from a 2007 case in which Appellant was also a defendant. The only person found inside the house was Timothy Johnson, who told police that Appellant had escaped through the attic. Police entered the adjoining home and found Appellant in the bathroom with pieces of insulation stuck to his body.

Appellant was charged with possession of a controlled substance, namely cocaine of four grams or more, but less than two hundred grams, with intent to

deliver.  A jury trial was held, and Appellant was found guilty.  The trial court sentenced Appellant to twenty years imprisonment.[2]  This appeal followed.

## Standard of Review

In his sole issue, Appellant argues that the evidence is legally insufficient to support his conviction.  In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

The jury found Appellant guilty of possessing a controlled substance with the intent to deliver it.  *See* Tex. Health & Safety Code Ann. §§ 481.102(1), 481.112(a) (West 2010).  "Possession" is defined as "actual care, custody, control, or management."  *Id*. § 481.002(38).  "Deliver" means to transfer a controlled substance to another.  *Id*. § 481.002(8).  The offense is a first degree felony if the amount of the controlled substance is four grams or more but less than two hundred grams.  *Id*. § 481.112(d).

To prove unlawful possession of a controlled substance, the State must show that:  (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband.

---

[2]Appellant's sentence was enhanced as a repeat offender.

*Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); *Joseph v. State*, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995). "Whether this evidence is direct or circumstantial, 'it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. This is the whole of the so-called "affirmative links" rule.'" *Poindexter*, 153 S.W.3d at 405–406 (quoting *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)).

The "affirmative links rule" is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs. *Id.*; *see United States v. Phillips*, 496 F.2d 1395, 1397 (5th Cir. 1974) ("Proof of mere proximity to contraband is not sufficient to establish actual constructive possession or the element of knowledge."), *cert. denied*, 422 U.S. 1056 (1975). The rule simply restates the common-sense notion that a person—such as a father, son, spouse, roommate, or friend—may jointly possess property like a house but not necessarily jointly possess the contraband found in that house. *Id.* (citing *United States v. Smith*, 930 F.2d 1081, 1086–87 (5th Cir. 1991)). Thus, the court of criminal appeals has formulated the rule that "[w]hen the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Id.* (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)).

4

The jury, as trier of fact, was entitled to draw reasonable inferences from the evidence and under the appropriate standard of review, we will uphold those inferences if they are supported by the evidence viewed in the light most favorable to the verdict. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Id*. (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)). It is enough if the jury's conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993), *cert. denied*, 511 U.S. 1046 (1994).

**Discussion**

At trial, Officer James Williams testified that on two days during the week before the search, he had conducted surveillance on the duplex and observed Appellant opening the door of the duplex for "several different people," each of whom only stayed for fifteen to twenty minutes. On the day of the search, Officer Williams saw a red Acura, that had been there before, parked in front of the duplex. Alvin Lightner, a suspected drug dealer, left the duplex and drove away in the Acura. Lightner was pulled over a few minutes later and found to have $6,010 in cash. Appellant points to the fact that he had very little money on his person at the time of his arrest as a fact that "diminish[es] any possible link between Appellant and the cocaine." However, the jury could have reasonably concluded that Lightner had sold cocaine to Appellant during the fifteen to twenty

5

minutes he was inside the duplex. It is reasonable for a fact finder to conclude that even a dealer must have a supplier.

In the house, officers found baggies of cocaine hidden in a doorframe compartment, a "fairly common" hiding spot. Officer Williams described the bag of cocaine as being divided into one large bag and a number of small bags of "user amount[s]." Inside the closet below the hidden doorframe compartment, officers found a blue jacket with another bag of cocaine in one of the pockets. The total amount of cocaine found at the duplex was 29.67 grams.

Officers found digital scales and baggies in the kitchen near a cell phone. On the cell phone, the police found a number of pictures of Appellant that appear to have been taken by him. In one picture, Appellant was holding a large plant in front of him that Officer Williams identified as a marijuana plant. Another picture showed Appellant lying on the couch that officers saw in the living room of the duplex. The cell phone's home screen "wallpaper" was a picture of Appellant with the phrase "$$$$LUCK$$$" on it. Another picture on the phone showed Appellant wearing the blue jacket that was found in the closet with cocaine in the pocket. Appellant argues that a picture he presented at trial showing Timothy Johnson wearing a t-shirt identical to one worn by Appellant in a different photograph is evidence that "[i]t is just as likely that Timothy Johnson put the cocaine in the pocket [of the jacket], as it is that Appellant put the cocaine in the pocket." However, the jury was not required to believe that the t-shirt in Johnson's picture was the exact same shirt as worn by Appellant, or if it was, that

evidence that the two men shared a t-shirt was evidence that they shared a jacket. The jury was presented with these same arguments and they were free to believe or disbelieve these conflicting theories. *See Goodman v. State*, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001) (stating that it "is a jury, not a reviewing court, that accepts or rejects reasonably equal competing theories"); *Gregory v. State*, 159 S.W.3d 254, 261 (Tex. App.—Beaumont 2005, pet. ref'd); *see also Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009) ("[W]hen there are two permissible views of the evidence (one tending to connect the defendant to the offense and the other not tending to connect the defendant to the offense), appellate courts should defer to that view of the evidence chosen by the fact-finder.").

Although Appellant was not in the house when the police entered, Officer Williams testified that he saw Appellant answer the door "no greater than 15 minutes before the execution of the search warrant." Although Johnson was the only person found in the house when the police entered, he admitted that Appellant had fled through the attic. Sergeant Russell Johnson testified that the partition in the attic crawlspace separating the two residences had been cut out and plywood laid down so that a person could crawl between the two attics. Appellant's ex-girlfriend presented pictures she had taken of the attic showing that the partition completely blocked off access to the other residence, but she also admitted that the pictures were taken a year after the search and that she did not know the condition of the attic at the time of the search. Sergeant

7

Johnson testified that when Appellant was found in the bathroom of the adjacent residence, he had insulation on him of the same type found in the attic. *See Simmons*, 282 S.W.3d 504 at 508 ("In determining whether non-accomplice evidence tends to connect a defendant to the offense, we have stated that 'the evidence must simply link the accused in some way to the commission of the crime and show that "rational jurors could conclude that this evidence sufficiently tended to connect [the accused] to the offense.''") (quoting *Malone v. State,* 253 S.W.3d 253, 257 (Tex. Crim. App. 2008)). The jury could have reasonably believed that Appellant attempted to flee from the police by crawling through the attic and could have reasonably inferred Appellant's guilt based on that attempt. *See Clayton*, 235 S.W.3d at 780 ("We have recognized that a factfinder may draw an inference of guilt from the circumstances of flight.").

Officer Williams testified that based on what he observed in the duplex, and his experience as a narcotics officer, he believed that Appellant was involved in drug dealing. The small baggies of cocaine were consistent with street-level packaging for distribution, which would have been accomplished by the use of the paraphernalia present—the digital scales and the baggies. That the drugs were hidden is indicative of drug dealing. The pattern of visitor traffic to the residence was also consistent with the delivery of drugs. Although no evidence was presented showing that Appellant owned or rented the duplex, Officer Williams testified that he believed that Appellant, by answering the door and allowing a number of people into the house, was exercising control over the

residence. Further, officers also found a court document with Appellant's name on it and a letter addressed to Appellant at a different address. Based on the evidence presented, we hold that the jury was able to reasonably infer that Appellant possessed a controlled substance with the intent to deliver. Viewing the evidence in the light most favorable to the jury's verdict and deferring to the jury's implicit resolution of the weight of the evidence, we hold that the evidence is legally sufficient to support the jury's verdict. We overrule Appellant's sole issue.

## Conclusion

Having overruled Appellant's sole issue, we affirm the judgment of the trial court.


LEE GABRIEL
JUSTICE

PANEL: LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 29, 2011